1   ,

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   ATLANTIC SPECIALTY INSURANCE          NO.  C15-1927-TSZ
    COMPANY,
9

                            Plaintiff,
10
                                               ORDER GRANTING MOTION FOR
11          v.                                 DISQUALIFICATION OF
                                               PREMERA'S COUNSEL
    PREMERA BLUE CROSS,
12

13                          Defendant.

14                  I.       INTRODUCTION AND SUMMARY CONCLUSION

15          This matter comes before the Court on the motion of plaintiff Atlantic Specialty

16   Insurance Company ("ASIC") to disqualify the law firm of Lane Powell, P.C. ("Lane Powell")

17   from representing defendant Premera Blue Cross ("Premera") in this declaratory judgment

18   action due to an alleged conflict of interest stemming from Lane Powell's concurrent

19   representation of one of ASIC's corporate affiliates.  Dkt. 16.  In this insurance coverage

20   dispute, ASIC is seeking a declaration that it has no duty to defend or indemnify Premera

21   under the commercial general liability policies issued by ASIC with respect to an underlying

22   consolidated class action lawsuit filed against Premera following a malware attack on

23   Premera's customer databases beginning in May 2014.  ASIC's disqualification motion was

24

ORDER - 1

referred to the undersigned by the Honorable Thomas S. Zilly on March 11, 2016 pursuant to 28 U.S.C. § 636(b)(1)(A).  Dkt. 39.

Based upon this Court's review of the parties' submissions, oral argument on the disqualification motion, the governing law, and the balance of the record, the Court GRANTS ASIC's motion to disqualify Lane Powell from representing Premera in this case due to a concurrent conflict of interest.  Dkt. 16.  Premera is directed to retain new counsel, who shall file Notices of Appearance within thirty (30) days of this Order.

## II.      DISCUSSION

A.      <u>Premera's Motion to Strike is Granted in Part and Denied in Part</u>

As a threshold matter, the Court addresses a surreply filed by Premera pursuant to LCR 7(g), asking the Court to strike ASIC's reply brief and supporting declarations because they allegedly contain new arguments and new evidence.  Dkt. 38.  As a general rule, a "movant may not raise new facts or arguments in his reply brief."  *Karpenski v. American General Life Companies, LLC*, 999 F. Supp.2d 1219, 1226 (W.D. Wash. 2014) (citing *United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992)).  Premera contends that the four declarations submitted with ASIC's reply brief are "from individuals with whom Lane Powell personnel have never had any interaction" setting forth "arcane corporate facts . . . [that] have never been a part of the record or made known to Lane Powell."  Dkt. 38 at 1-2.  Premera does not explain what arguments in ASIC's reply brief are allegedly "new."

The Court does not agree that ASIC's reply brief contains improper new arguments, and declines to strike the brief.  However, the Court agrees with Premera that the Declarations of David Dembo, David Clancy, Joshua Boomgaarden, and John Treacy introduced in reply by ASIC should have been introduced in support of ASIC's opening brief.  Consequently, these declarations, Dkts. 33, 34, 36, and 37, are STRICKEN.  In contrast, Kathryn Lindley's

supplemental declaration, Dkt. 35, was introduced upon reply to directly contradict representations made by Premera in their brief about Ms. Lindley's knowledge during the relevant time period. The Court therefore declines to strike Ms. Lindley's supplemental declaration. Dkt. 35.

      B.      <u>Factual and Procedural History</u>

            *1.   OneBeacon's Wholly-Owned Subsidiaries, ASIC and Homeland*

      ASIC and Homeland Insurance Company of New York ("Homeland") are two wholly-owned subsidiaries of the OneBeacon Insurance Group, LLC ("OneBeacon").[1] Dkt. 17 (Lindley Decl.) at ¶ 1-2; Dkt. 18 (Arends Decl.) at ¶ 2. All OneBeacon member companies share the same mailing address and principal place of business. Dkt. 18 (Arends Decl.) at ¶ 2. These entities' operations are structured so that claims-handling services for all OneBeacon companies are handled by the same internal Claims Unit personnel, who are all employees of ASIC, with the claims leadership located in Plymouth, Minnesota. Dkt. 17 (Lindley Decl.) at ¶ 4; Dkt. 18 (Arends Decl.) at ¶ 3.

      The Claims Legal Unit acts as an internal legal resource to all OneBeacon claims personnel, and together with the primary Claims Attorney or other assigned claim handler, the Claims Legal Unit is involved in all insurance coverage litigation commenced by or against the OneBeacon companies, including ASIC and Homeland. Dkt. 17 (Lindley Decl.) at ¶ 6. Homeland has no employees. Dkt. 17 (Lindley Decl.) at ¶ 4; Dkt. 18 (Arends Decl.) at ¶ 3. All claims handled by the Claims Unit report up through various levels of management to the Chief Claims Officer, including the VP Claims Legal, the VP Specialty Property and Casualty

---

[1] OneBeacon Insurance Group, LLC is a wholly-owned subsidiary of OneBeacon Insurance Group, Ltd., a publicly traded company. Dkt. 18 (Arends Decl.) at ¶ 2.

1   ("SP&C") Liability Claims, and the Vice-Presidents of other units.  Dkt. 18 (Arends Decl.) at ¶

2   4.

3         The SP&C Liability team handles property and casualty liability claims for the

4   OneBeacon Environmental and OneBeacon Financial Services business units, among others,

5   including claims under the Commercial General Liability ("CGL") primary and excess policies

6   issued by both ASIC and Homeland.  Dkt. 18 (Arends Decl.) at ¶ 5.  The claims attorneys on

7   the SP&C Liability team are managed by Vice President of SP&C Liability Claims Cynthia

8   Arends.  *Id.*  Relevant to this action, claims attorney Kathryn Lindley was part of the SP&C

9   Liability team under Ms. Arends' supervision.  *Id.*[2]

10          2.   *Lane Powell's Representation of OneBeacon's Homeland in*
                 *the AAM Matter*

11          In late July 2015, OneBeacon received a claim under the CGL policy issued by

12   OneBeacon's Homeland to AAM, Inc. (the "AAM matter").  The AAM matter was a coverage

13   dispute arising from an employee injury lawsuit against AAM.  Ms. Lindley was assigned to

14   handle that claim in early August 2015.  Dkt. 18 (Arends Decl.) at ¶ 6.  On August 13, 2015,

15   Ms. Lindley engaged Lane Powell attorney William Patton, who is based in Portland, to

16   represent Homeland.   Dkt. 17 (Lindley Decl.) at ¶¶ 9-14; Dkt. 18 (Arends Decl.) at ¶¶ 6-7.  On

17   August 14, 2015, Ms. Lindley received an email from Mr. Patton stating, "I have confirmed

18   that there is no conflict, so we can proceed."  Dkt. 17 (Lindley Decl.) at ¶ 10.  Ms. Lindley was

19   advised that the other Lane Powell attorneys who would work on the matter were Steve Jensen,

20   a shareholder in the Seattle office, and Matthew Kirkpatrick, an associate attorney in the firm's

21   Portland office.  *Id.* at ¶ 12.

22   _____

23        [2] Ms. Lindley's title changed from Claims Attorney to Assistant Vice President for
     Environmental Claims, OneBeacon Environmental, on September 21, 2015 when she was
     promoted to a different position.  Dkt. 17 (Lindley Decl.) at ¶ 8.  Ms. Lindley continued to
24   work on the Premera matter until January 2016, and continues to handle the AAM matter.  *Id.*

All of Ms. Lindley's emails to Mr. Patton and the other attorneys at Lane Powell came from her OneBeacon email account (onebeacon.com), and her signature block clearly identified her as a claims attorney for OneBeacon Environmental. *Id*. at ¶¶ 11, 14. Surprisingly, no formal engagement letter was ever executed. However, Ms. Lindley sent Mr. Jensen a document entitled "OneBeacon Insurance Company Counsel Case Handling Guidelines" on August 19, 2015, as well as a copy of a form letter on "OneBeacon Insurance" letterhead providing instructions for the "OneBeacon Insurance" online invoice submission system. *Id.* at ¶ 13; Dkt. 17 (Lindley Decl.), Ex. 1. The OneBeacon Insurance Company Counsel Case Handling Guidelines discuss the relationship between outside counsel and the client, which is identified as "OneBeacon Insurance, *and its specialty business segments*." Dkt. 17 (Lindley Decl.), Ex. 1 (emphasis added). For example, the mission statement provides that "OneBeacon Insurance, and its specialty business segments, believe in securing high-quality, cost-effect service to represent its interests . . . we strive for close collaboration with company counsel to resolve litigation and/or legal matters at the best possible value." *Id.*

Lane Powell's representation of Homeland in the AAM matter from August 2015 through January 2016 involved the Lane Powell attorneys providing legal advice to Ms. Lindley, and seeking a declaration that Homeland had no duty to defend or indemnify the defendants in the underlying action, *Homeland Ins. C. of N.Y. v. AAM, Inc.*, No. 3:15-cv-01745-PK (D. Ore.). Lane Powell's representation included drafting multiple reservation-of-rights letters, discussing a possible declaratory judgment action with Ms. Lindley and other members of OneBeacon's Claims Legal department, drafting a declaratory judgment complaint, participating in court-mandated scheduling conferences, and researching and preparing a draft brief in support of a motion for summary judgment. Dkt. 17 (Lindley Decl.) at ¶¶ 15-17. Ms. Lindley asserts in her declaration that she and OneBeacon's Claims Legal

department members had extensive discussions with Lane Powell regarding OneBeacon's litigation strategy in coverage actions, its view of policy interpretation, its perspective on Washington insurance law, and related matters.  Dkt. 17 (Lindley Decl.) at ¶¶ 15-17.  *See also* Dkt. 18 (Arends Decl.) at ¶ 7 ("Prior to commencing the declaratory judgment action in the AAM matter, I participated in strategy discussions with Ms. Lindley and the Claims Legal attorneys . . . to formulate OneBeacon's position and approve the direction provided to our outside counsel, Lane Powell.").

### 3.   *Lane Powell's Representation of Premera*

On March 17, 2015, Lane Powell was formally engaged to represent Premera with respect to the cyberattack that is the basis of the underlying class action.  Dkt. 24 (Payton Decl.) at ¶ 3.  Lane Powell has represented Premera with respect to commercial litigation and regulatory issues, including liability insurance, for over nineteen years.  *Id.* at ¶ 2.  Gwyndolyn Payton, a shareholder in Lane Powell's Seattle office, asserts that she has been Premera's primary contact for the bulk of that time, although she is sometimes joined by Seattle shareholder John Neeleman, such as in matters implicating actual or potential liability insurance coverage disputes.  *Id.* at ¶¶ 2-3.  Ms. Payton asserts that Lane Powell's representation of Premera following the cyberattack has included providing advice regarding liability insurance for the cyberattack, and that such advice was provided to Premera "well before August 2015."  *Id.* at ¶ 3.[3]

OneBeacon's ASIC issued Premera two "@vantage for Financial Services Premier" liability insurance policies at issue in this declaratory judgment action.  The first policy was effective from October 1, 2013 through October 1, 2014.  Dkt. 1, Ex. B-3.  The second policy

---

[3] Specifically, Lane Powell appeared for Premera in multiple individual lawsuits arising out of the data breach, and also appeared for Premera in the consolidated class action MDL that underlies this case on August 7, 2016, before it was filed on October 6, 2015.  *Id.*

1    was effective from October 1, 2014 through October 1, 2015.  Dkt. 1, Ex. C-3.  Both policies

2    provided primary and umbrella commercial general liability coverage.

3            Ms. Lindley was assigned to the Premera insurance-coverage claim under the primary

4    and umbrella CGL coverages issued by ASIC.  Dkt. 17 (Lindley Decl.) at ¶ 18, Ex. B and C;

5    Dkt. 18 (Arends Decl.) at ¶ 8.  Before the class action complaint was filed, Premera had

6    tendered a number of individual lawsuits arising out of the data breach to ASIC, seeking

7    coverage under the ASIC policies.  By letter dated July 2, 2015, ASIC agreed to defend

8    Premera against the first tendered individual lawsuit, *Webb, et. al., v. Premera Blue Cross*,

9    under a complete reservation of its rights under the ASIC policies and applicable law.  Dkt. 17

10   (Lindley Decl.) at ¶ 19.  Specifically, Ms. Lindley sent a letter on "OneBeacon Financial

11   Services" letterhead and the subject line of the letter identified the underwriter as "Atlantic

12   Specialty Insurance Company (OneBeacon)," with a signature block identifying her as "Claims

13   Consultant, OneBeacon Financial Services" and an email address of klindley@onebeacon.com.

14   *Id.*  Similarly, after ASIC learned that all of the individual lawsuits arising from the Premera

15   data breach were to be consolidated into a class action filed in the U.S. District Court for the

16   District of Oregon, Ms. Lindley advised Premera by supplemental letter dated July 31, 2015

17   that ASIC was reserving all of its rights under the ASIC policies and applicable law as to all of

18   the individual lawsuits filed against Premera arising out of the same data breach.  *Id.*

19           Ms. Lindley was advised by Premera's broker in July 2015 that Premera had retained

20   Lane Powell to represent it as local counsel in defending the underlying data breach actions, a

21   role that was not adverse to OneBeacon because OneBeacon and Premera's interests were

22   aligned in defending against the class action.  Dkt. 35 (Second Lindley Decl.) at ¶ 9.

23   Specifically, by email dated July 15, 2015, Ms. Lindley confirmed her understanding that Lane

24   Powell was representing Premera with regard to the individual lawsuits arising from the

ORDER - 7

1    cyberattack.  Dkt. 28, Ex. 2 (noting that OneBeacon has offered Premera a defense under a

2    reservation of rights with regard to one of the individual lawsuit under the CGL coverage, and

3    commenting that "it would also be helpful to know what rates Lane Powell, who we

4    understand is acting as local counsel, is charging[.]").  However, Ms. Lindley was not advised

5    by Premera, Premera's broker, or Lane Powell that Lane Powell was also acting as Premera's

6    coverage counsel.  Dkt. 35 (Second Lindley Decl.) at ¶ 9.

7        On August 7, 2015, Lane Powell appeared on behalf of Premera in the underlying class

8    action.  The class action complaint was filed on October 6, 2015.  By letter dated November 6,

9    2015, Ms. Lindley acknowledged receipt of the class action complaint and agreed to defend

10   Premera against the lawsuit, again, under a complete reservation of its rights under the ASIC

11   policies and applicable law.  Dkt. 17 (Lindley Decl.) at ¶ 19.  These letters were also sent on

12   the OneBeacon Financial Services letterhead, identified the underwriter as "Atlantic Specialty

13   Insurance Company (OneBeacon)", and identified OneBeacon Financial Services in the

14   signature block.  *Id.*  Although neither party has provided evidence that Lane Powell, as

15   Premera's coverage counsel, received copies of the Reservations of Rights letters sent from

16   ASIC to Premera, during oral argument Ms. Payton conceded that Lane Powell likely reviewed

17   these letters and therefore knew about the potential adversity to ASIC as early as July 2, 2015,

18   when Ms. Lindley sent the first letter.

19       On December 8, 2015, OneBeacon's ASIC initiated this action against Premera,

20   seeking a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has no duty to defend or

21   indemnify Premera under the CGL coverage against the data-breach claims asserted against it

22   in the consolidated class action.  Dkt. 1.  *See also* Dkt. 17 (Lindley Decl.) at ¶ 20; Dkt. 18

23

24

(Arends Decl.) at ¶ 9.  On December 21, 2015, Ms. Payton and Mr. Neeleman filed Notices of Appearance on behalf of Premera in this case.  Dkts. 10-11.[4]

Ms. Lindley was not aware that Lane Powell was acting as Premera's insurance coverage counsel until December 21, 2015, when Ms. Payton and Mr. Neeleman's Notices of Appearance were filed.  Dkt. 17 (Lindley Decl.) at ¶ 22.  Lane Powell did not contact OneBeacon to advise the company of the representation, discuss whether the representation presented a conflict, or request a waiver.  *Id*.  Ms. Lindley immediately contacted attorney Mr. Kirkpatrick to alert him to her belief that Lane Powell had a conflict of interest on December 21, 2015, and in response to a voice-mail message from Mr. Patton, also "subsequently discussed the conflict with both Mr. Patton and Mr. Jensen" on December 22, 2015.  *Id*. at ¶ 23.

During this conversation, Mr. Jensen advised Ms. Lindley that he was unaware that Mr. Neeleman and Ms. Payton had appeared in the Premera action, adverse to ASIC, until Ms. Lindley brought it to his attention.  *Id*.; *see also* Dkt. 26 (Jensen Decl.) at ¶¶ 3-4.  However, Ms. Lindley asserts that "Mr. Jensen told me that Mr. Neeleman was aware of the relationship between ASIC and Homeland *before appearing in the Premera action* and that Mr. Neeleman did not believe there was a conflict and would not withdraw."  *Id*. (emphasis added).  Mr. Jensen denies making this representation.  Dkt. 26 (Jensen Decl.) at ¶ 5 ("I have no knowledge whatsoever to the effect that Mr. Neeleman was aware of a relationship between [ASIC] and Homeland prior to Lane Powell PC entering a notice of appearance on behalf of Premera.  Mr. Neeleman has never stated to me that he had any such awareness.").  *See also* Dkt. 27 (Patton

---

[4] As noted above, Mr. Neeleman and Ms. Payton are shareholders in the firm's Seattle office, where attorney Mr. Jensen also works.  According to the law firm's website, Mr. Neeleman and Ms. Payton are also members of the firm's health care practice, like Mr. Jensen. Dkts. 17, Exs. 5-6 (website biographies).

Decl.) at ¶ 5.[5]  Mr. Neeleman also denies making such a statement, and asserts that he had

never heard of Homeland until Mr. Patton telephoned him on December 21, 2015 to inform

him of the alleged conflict, at which time Mr. Neeleman "informed [Mr. Patton] that

Homeland must be mistaken, because I had for the past three years been personally

representing clients (the Anova companies) adverse to [ASIC], and that representation and

adversity was still ongoing."  Dkt. 28 (Neeleman Decl.) at ¶ 9.

Following Ms. Lindley's December 22, 2015 discussion with Mr. Jensen and Mr.

Patton, Ms. Lindley spoke with Randall Beighle, Lane Powell's internal General Counsel, on

December 28, 2015, and expressed her concern that Lane Powell was in a conflict of interest

position because Ms. Lindley had engaged Lane Powell to represent Homeland to the AAM

matter, and the plaintiff in this case, ASIC, is a sister corporation of Homeland.  Dkt. 17

(Lindley Decl.) at ¶ 24; Dkt. 25 (Beighle Decl.) at ¶ 2.  Mr. Beighle told Ms. Lindley that he

would look into the situation and provide a response following an investigation.  Dkt. 25

(Beighle Decl.) at ¶ 2.  On January 14, 2016, Ms. Lindley, her supervisor Ms. Arends, and Mr.

Beighle discussed the matter further by telephone.  Dkt. 17 (Lindley Decl.) at ¶ 25; Dkt. 18

(Arends Decl.) at ¶ 10; Dkt. 25 (Beighle Decl.) at ¶ 2.

During that call, Mr. Beighle advised Ms. Lindley and Ms. Arends that there had been a

problem with Lane Powell's August 2015 conflicts check and Lane Powell, for the first time,

had identified an earlier conflict with respect to Lane Powell's representation of Homeland in

---

[5] Mr. Patton states that "I telephoned Mr. Neeleman and shared with him what Mr. Kirkpatrick had told me about Ms. Lindley's claim that Lane Powell was now in a conflict of interest position. Mr. Neeleman expressed surprise because, he said, he had been adverse to [ASIC] for three years, and he had never before heard of Homeland." Dkt. 27 (Patton Decl.) at ¶ 5. Thus, Mr. Patton opined that "[b]ased on my discussion with Mr. Neeleman, I believe that Ms. Lindley's assertion in her declaration herein that Mr. Neeleman had been aware of the relationship between [ASIC] and Homeland before I informed him of it is incorrect.  Mr. Neeleman never said any such thing to me, and I never said any such thing to Ms. Lindley." *Id.*

the AAM matter.  Dkt. 17 (Lindley Decl.) at ¶ 24; Dkt. 18 (Arends Decl.) at ¶ 10.  Mr. Beighle explained that Lane Powell had a prior representation adverse to ASIC that preceded the Homeland representation (on behalf of a company called Anova Foods LLC) and that representation was still ongoing.  Dkt. 25 (Beighle) at ¶ 3.  Mr. Beighle stated that Lane Powell did not believe there was an "actual conflict of interest" because affiliates are not presumptively clients of actual clients.  *Id.*  He told Ms. Lindley and Ms. Arends that Lane Powell would agree to ask Anova Foods LLC and Premera for waivers that would enable Lane Powell to continue to represent Homeland, and advised them that neither Ms. Payton nor Mr. Neeleman work with Mr. Patton or Mr. Jensen or have access to the Homeland materials.  *Id.* at ¶ 6.

Although Mr. Beighle may have understood the Anova Foods case to have presented a concurrent conflict of interest at the time of his conversation with Mr. Lindley and Ms. Arends, Lane Powell now appears to concede that the alleged "prior conflict" that formed the basis of Lane Powell's withdrawal/termination from the AAM matter was no longer a concurrent conflict.  Specifically, Lane Powell had represented an ASIC policyholder, Anova Food, LLC (and its predecessor Anova Food, Inc.) in an ongoing coverage dispute prior to the AAM matter.  Dkt. 17 (Lindley Decl.) at ¶ 26; *see also* Dkt. 28 (Neeleman Decl.) at ¶ 2 ("Since November 30, 2012, Lane Powell has been representing Anova Food LLC . . . in a still-ongoing coverage dispute with [ASIC] that apparently will now be finally resolved through coverage litigation.").[6]  However, the part of OneBeacon's business that included the Anova

---

[6] Specifically, Mr. Neeleman explains that "the Anova companies claim liability insurance coverage from [ASIC] for losses they incurred in the litigation matter of *Kowalski v. Anova Food, LLC, et al.*, No. CV11-00795, (the "Kowalski Suit"), venued in the U.S. District Court for the District of Hawaii.  Kowalski – a competitor of the Anova companies – alleged patent infringement and state and federal (Lanham Act) unfair competition claims.  [ASIC] insured both Anova companies during the relevant time period pursuant to a commercial

1    claim was sold to Armour Risk effective December 2014, at which point the claim person

2    handling the Anova matter ceased to be an ASIC employee and ASIC's handling of the Anova

3    claim also ceased.  Dkt. 17 (Lindley Decl.) at ¶ 26.   Because the book containing the Anova

4    claim was sold to a third party in December 2014, there was no relationship between ASIC and

5    Anova in August 2015, when Lane Powell undertook the representation of Homeland.  *Id.*

6    Thus, there was no concurrent conflict of interest that necessitated Lane Powell's withdrawal

7    from the AAM matter.  *Id.*; Dkt. 18 (Arends Decl.) at ¶ 10 ("As Mr. Beighle described this

8    alleged earlier conflict, it was immediately clear to me that this prior matter was not similarly

9    situated, most notably because it was not a claim being handled within the SP&C Liability

10   team.").

11       Mr. Beighle asserts that during his communications with Ms. Lindley, he was never

12   told that the book containing the Anova claim had been sold by OneBeacon to a third party in

13   December 2014, or that there was therefore no longer an ongoing relationship between

14   OneBeacon and Anova in August 2015, when Lane Powell undertook its representation of

15   Homeland.  Dkt. 25 (Beighle) at ¶ 5.  Mr. Beighle asserts, however, that this fact would not

16   have obviated Lane Powell's need to obtain a waiver from Anova LLC in any event, as ASIC

17   remains Anova LLC's opponent.  *Id.*

18       The parties offer slightly differing accounts of how Lane Powell withdrew, or was

19   terminated, from the AAM matter.  However, what is clear is that Lane Powell's representation

20

21   general liability policy."  Dkt. 28 (Neeleman Decl.) at ¶¶ 3-4.  Lane Powell's Mr. Neeleman
     has represented the Anova companies against the ASIC lawyers, and asserts that he has "been
22   locked in a protracted dispute with [ASIC] and its lawyers over [ASIC's] obligation to
     indemnify the Anova companies' losses related to the Kowalski litigation."  *Id.* at ¶ 5.
23   Although "the Kowalski Suit itself has been settled," Mr. Neeleman asserts that "an insurance
     coverage dispute between Anova LLC and [ASIC] related to the Kowalski Suit continues to
24   this day, and we remain involved in it as Anova LLC's counsel, adverse to [ASIC]…"  *Id.* at ¶
     7.  For example, Mr. Neeleman recently received a settlement offer on behalf of ASIC.  *Id.*

ORDER - 12

of Homeland was extinguished when the firm refused to voluntarily withdraw from its representation of Premera in this case.

As noted above, during the January 14, 2016 call, Mr. Beighle advised Ms. Lindley and Ms. Arends that Lane Powell would agree to ask Anova Foods LLC and Premera for waivers that would enable Lane Powell to continue to represent Homeland. *Id*. at ¶ 6. Ms. Lindley responded that she regarded Homeland and ASIC as indistinguishable, and therefore ASIC would agree to a waiver with respect to the Anova representation by Lane Powell but not the Premera representation. *Id.* at ¶ 7. Mr. Beighle stated that the firm was going to withdraw from the AAM action regardless of whether OneBeacon would waive the alleged conflict with Anova, and Lane Powell would not voluntarily withdraw from its representation of Premera in this matter. Dkt. 17 (Lindley Decl.) at ¶ 26; Dkt. 18 (Arends Decl.) at ¶ 10; Dkt. 25 (Beighle Decl.) at ¶ 3 ("I told Ms. Lindley and Ms. Arends that Lane Powell would not withdraw from the Premera case."). Ms. Arends "followed up and asked Mr. Beighle to confirm that despite the fact that he was referencing an earlier alleged conflict, in reality, Lane Powell's decision to withdraw from the AAM matter was due to its later appearance in the Premera matter and Mr. Beighle stated 'yes.'" Dkt. 18 (Arends Decl.) at ¶ 10. Ms. Lindley then informed Mr. Beighle that OneBeacon would be filing a motion to disqualify Lane Powell in this case. Dkt. 17 (Lindley Decl.) at ¶ 28; Dkt. 18 (Arends Decl.) at ¶ 10.[7]

Following the phone call, OneBeacon instructed its counsel to prepare a motion to disqualify Lane Powell in this action, and hired replacement counsel in the AAM matter. Dkt. 17 (Lindley Decl.) at ¶¶ 28-29. Ms. Lindley then wrote to Mr. Jensen on January 19, 2016 and

---

[7] According to Mr. Beighle, however, "Ms. Lindley said that they would discuss Lane Powell's position and would consider transferring the Homeland case to another firm. Then they ended the call." Dkt. 25 (Beighle Decl.) at ¶ 8.

1    terminated Lane Powell for Homeland, instructing the firm to transfer the files to a new law

2    firm.  Dkt. 25 (Beighle Decl.) at ¶ 8.

3            Until the dispute that led to ASIC's motion to disqualify Lane Powell in this case, Ms.

4    Payton asserts that she was unaware that ASIC was affiliated with Homeland, and she has not

5    had any access to the materials related to Lane Powell's representation of Homeland.  Dkt. 24

6    (Payton Decl.) at ¶ 4.  Lane Powell has a screen in place to block access to the AAM, Inc.

7    physical file and electronic documents.  Dkt. 25 (Beighle Decl.) at ¶ 9.  In addition, the only

8    persons who have accessed the documents related to the AAM litigation are Lane Powell

9    attorneys Mr. Jenson, Mr. Patton, Mr. Kirkpatrick, and Mr. Beighle.  *Id.*

10           C.       Summary of the Parties' Contentions

11           ASIC alleges that Lane Powell has a concurrent conflict of interest and must be

12   disqualified from representing Premera in this declaratory judgment action, adverse to

13   OneBeacon's ASIC, because at the time Lane Powell appeared in this case as Premera's

14   coverage counsel the firm was already representing OneBeacon's Homeland in a separate

15   declaratory judgment action.  ASIC argues that the client in both declaratory judgment actions

16   was ultimately the same OneBeacon Claims Legal Unit, as evidenced by the fact that the same

17   claims attorney Ms. Lindley was assigned to both cases.  ASIC further argues that Lane Powell

18   was exposed to confidential client information about OneBeacon's operations and coverage

19   litigation strategies during the Homeland representation, and therefore cannot continue to

20   represent Premera as coverage counsel in this action.  ASIC asserts that Lane Powell's

21   representation of Premera in this case presents a concurrent conflict of interest under RPC 1.7

22   as there were several weeks of concurrent representation when Lane Powell was representing

23   Homeland in the AAM matter and also Premera adverse to ASIC in the present case, and Lane

24

Powell's attempt to terminate the lawyer-client relationship with OneBeacon's Homeland did not cure the problem.  Dkt. 16 at 6-7.

ASIC asserts that even if the Court finds that the less restrictive RPC 1.9 applies, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.  RPC 1.9(a).  A matter is substantially related "if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  RPC 1.9 cmt. 3.  ASIC asserts that like the AAM matter, this case involves a dispute over a duty to defend under a OneBeacon commercial general liability policy.  ASIC argues that Lane Powell's extensive discussions with Ms. Lindley and OneBeacon's Claims Legal department in the AAM matter, learning OneBeacon's litigation strategy in coverage actions, view of policy interpretation, and perspective on Washington insurance law and related matters constitute confidential client information that must result in Lane Powell's disqualification in this case so that Lane Powell may not use the confidential information about OneBeacon's operations to its disadvantage.  Dkt. 16 at 8-9 (citing *Jones v. Rabanco, Ltd.*, 2006 WL 2237708, at *4 (W.D. Wash. Aug. 3, 2006)).  ASIC points out that matters can be "substantially related" for RPC 1.9 purposes where facts that would have been learned in the earlier representation "reveal the client's pattern of conduct."  *Ali v. American Seafoods Co., LLC*, 2006 WL 1319449, at *4 (W.D. Wash. 2006).

Premera responds that Lane Powell has always been adverse to ASIC.  Dkt. 23 at 3.  When Ms. Lindley retained Lane Powell to represent Homeland in the AAM matter, the firm had been adverse to ASIC in the Anova litigation since November 2012, had already been

1   engaged by Premera with respect to the cyberattack, and Ms. Lindley was already aware of the

2   fact that the firm was representing Premera in the individual lawsuits and underlying class

3   action related to the data breach. *Id*. at 5.  Premera further argues that no one at the firm was

4   aware of the relationship between Homeland and ASIC before Ms. Lindley raised the issue,

5   and in fact "[o]nly Ms. Lindley had this information, and yet she made no effort to educate

6   Lane Powell as to it." *Id*. at 10.[8]

7         With respect to ASIC's assertion that there was a concurrent conflict of interest due to

8   ASIC and Homeland's status as subsidiaries of OneBeacon, Premera responds that Lane

9   Powell was terminated by Homeland on January 19, 2016, which resolved any potential

10  conflict and makes Homeland a former client of the firm.  Premera argues that corporate

11  affiliates of actual clients are not presumptively clients themselves, as an attorney-client

12  relationship with one member of a corporate family does not presumptively give rise to

13  attorney-client relationships with all others.  Premera asserts that this Court has applied the

14  "appearance of impropriety" standard to determine whether disqualification should occur based

15  upon RPC 1.7 notwithstanding the absence of an attorney-client relationship with the moving

16  party.  Dkt. 23 at 8 (citing *Rabanco,* 2006 WL 2237708, at *4 (holding that although the law

17  firm was currently representing Rabanco's wholly-owned subsidiary and not Rabanco, "the

18  appearance of impropriety would be too great if [the law firm] were to continue to represent

19  Plaintiffs against Rabanco")).  Premera contends that there is no appearance of impropriety

20  here, as Lane Powell was retained by Ms. Lindley to represent Homeland exclusively, and with

21  full knowledge that Lane Powell was adverse to ASIC and was representing Premera in the

22  _____

23        [8] Lane Powell also argues that neither the OneBeacon Insurance Company Counsel
    Case Handling Guidelines or instructions for the OneBeacon Insurance online invoice
    submission system paperwork that governed Lane Powell's attorney-client relationship with
24  Homeland in the AAM matter purported to reflect any attorney-client relationship between
    Lane Powell and any entity other then Homeland. *Id.* at 5-6.

ORDER - 16

1 cyberattack litigation underlying this case.  Premera asserts that if ASIC "has genuine concerns

2 about conflicts of interest on the part of Lane Powell, it has only itself to blame," as ASIC

3 "itself bears responsibility for the conflict of interest problem that it alleges."  Dkt. 23 at 10.

4          Premera further contends that because Homeland is no longer a current Lane Powell

5 client, RPC 1.9 (and not RPC 1.7) applies, and therefore the question is whether "the matters

6 are *substantially related*."  *FMC Tech., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1158 (W.D.

7 Wash. 2006) (emphasis in original).  Premera concedes that for purposes of this analysis, an

8 attorney may not dissipate a conflict of interest by converting a present client into a former

9 client by withdrawing from representation of a disfavored client.  Dkt. 23 at 11 (citing *Sabrix,*

10 *Inc. v. Carolina Cas. Ins. Co.*, No. CV-02-1470-HU, 2003 WL 23538035, at *3 (D. Or. July

11 23, 2003) (citing *Unified Sewerage Agency of Wash. Cty., Or. v. Jelco, Inc.*, 646 F.2d 1339,

12 1345 n.4 (9th Cir. 1981)). However, Premera points out that more recent cases have

13 acknowledged exceptions to this "hot potato" rule, such as "if a firm had a bona fide

14 independent basis . . . to sever its ties with a client."  Dkt. 23 at 12 (citing *CQS ABS Master*

15 *Fund Ltd. v. MBIA Inc*., NO. 12 CIV 6840 RJS, 2013 WL 3270322, at *9 (S.D.N.Y. June 24,

16 2013)).  Premera asserts that Lane Powell's preexisting professional and ethical obligations to

17 Anova LLC and Premera provided Lane Powell with a "bona fide independent basis" to sever

18 ties with Homeland, as "[ASIC] and Homeland are separate corporations, and Premera and

19 Anova LLC were the first clients, while Homeland was the second."  Dkt. 23 at 13.   As

20 Homeland is a former client of Lane Powell, Premera asserts that RPC 1.9's "substantially

21 related" standard should govern ASIC's disqualification motion, and there is no factual nexus

22 between the current coverage litigation and the AAM litigation.  *Id*.[9]

23 

24          [9] As discussed above, this coverage litigation arises from the computer cyber-attack on
Premera's databases, and the AAM litigation involved a claim for coverage under the

ORDER - 17

ASIC responds that the proffered defense that OneBeacon, rather than Lane Powell, is to blame for failing to identify the conflict of interest at the time Lane Powell was retained to represent Homeland is erroneous, because the Rules of Professional Conduct impose duties on lawyers and not clients. Dkt. 32 at 2. ASIC contends that Lane Powell cannot dispute that when they appeared adverse to ASIC in this matter they were already representing Homeland – a clear violation of RPC 1.7 when corporate affiliates conduct unified operations. *Id.* The fact that Lane Powell was allegedly adverse to ASIC in the Anova matter at the time the firm began representing Homeland "not only does not provide Lane Powell a defense to its breach of the RPC, it does nothing more than admit another RPC violation, with Lane Powell accepting representation of Homeland at the same time it allegedly was adverse to ASIC in Anova." *Id.*[10] In other words, ASIC's position is that two wrongs do not make a right.

    D.   <u>Legal Standards</u>

        1.  *Disqualification Generally*

At the outset, the Court acknowledges that disqualification of counsel is a drastic

---

"additional insured" clauses of Homeland's policy arising from a construction worksite accident. Dkt. 23 at 13.

[10] Finally, ASIC argues that the fact that Lane Powell was acting as Premera's coverage counsel since "well before August 15, 2015" suggests additional impropriety on Lane Powell's part, as ASIC is not the only OneBeacon company that issued liability insurance to Premera, and Premera also had managed-care liability insurance. Dkt. 32 at 2-3. Specifically, Homeland is an excess insurer in the managed-care tower, which also is defending, and has issued a Reservation of Rights. *Id.* at 3. Thus, ASIC argues that Lane Powell, acting as Premera's coverage counsel, "must have reviewed Homeland's policy and [Reservation of Rights], and provided coverage advice to Premera (*directly adverse to Homeland*), prior to the AAM suit." *Id.* (emphasis in original). ASIC contends that this may explain why Ms. Payton's declaration does not state that she had never heard of Homeland before this conflict arose, and why Lane Powell was so anxious to withdraw from the AAM matter, despite OneBeacon's willingness to enter into a waiver for the alleged Anova/AAM conflict. *Id.* However, Premera did not have an opportunity to respond to this contention, and the parties did not discuss this issue during oral argument. There is insufficient evidence in the record for the Court to make any finding on this issue, and the Court does not rely upon it in finding that Lane Powell should be disqualified in this matter.

measure and that it must consider the danger of a motion to disqualify opposing counsel as a litigation tactic. *FMC Technologies, Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157 (W.D. Wash. 2006). With those considerations in mind, this Court has a duty to examine charges of a conflict of interest. *Id.* (citing *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)).

"In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court first refers to the local rules regulating the conduct of members of its bar." *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1560 (W.D. Wash. 1986). Attorneys practicing in the Western District of Washington must abide by the "Washington Rules of Professional Conduct, as promulgated, amended, and interpreted by the Washington State Supreme Court . . . and the decisions of any court applicable thereto[.]" Local Rules W.D. Wash. GR 2(e). Accordingly, the Washington Rules of Professional Conduct ("RPCs") will govern the disqualification analysis. The burden of proof rests with the firm whose disqualification is sought. *Amgen, Inc. v. Elanex Pharmaceuticals, Inc.*, 160 F.R.D. 134, 140 (W.D. Wash. 1994).

### 2. RPCs Governing Conflicts of Interest with Current and Former Clients

The conflict of interest alleged by ASIC implicates Rule 1.7 of the Washington RPCs. Relevant to this matter, RPC 1.7 provides that unless certain requirements are met, including the lawyer obtaining written consent from each affected client, "[a] lawyer *shall not* represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) [t]he representation of one client will be directly adverse to another client; or (2) [t]here is a significant risk that the representation of one or more clients will be

ORDER - 19

materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  RPC 1.7(a) (emphasis added).[11]

Premera contends that RPC 1.9, rather than RPC 1.7, applies in this case.  RPC 1.9 sets forth lawyers' duties to former clients, and provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the *same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  RPC 1.9(a) (emphasis added).  Comment 3 to RPC 1.9 provides that "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  Thus, "[u]nder Rule 1.9(a), the significant elements are (1) that the conflict involves a *former client*; (2) that the subsequent representation is *materially adverse* to the former client; and (3) that the matters are *substantially related*."  *FMC Techs., Inc.*, 420 F. Supp. 2d at 1158-59 (emphasis in original).

E.    Lane Powell Must Be Disqualified Due to a Concurrent Conflict of Interest

The first issue before the Court is whether the current-client rule, RPC 1.7, or the former-client rule, RPC 1.9, governs the Court's disqualification analysis.  As noted above, RPC 1.7 is "less forgiving" than RPC 1.9, and disqualifies an attorney from concurrently

---

[11] Specifically, notwithstanding the existence of a concurrent conflict of interest under 1.7(a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing (following authorization from the other client to make any required disclosures).  RPC 1.7(b).

representing two clients with adverse interests, even if the matters are wholly unrelated.  *See* RPC 1.7(a).  Thus, the question is whether ASIC and Homeland's common management, reinsurance agreement, and shared Legal Claims Unit require them to be treated as a single entity for conflicts purposes.  As noted above, Lane Powell contends that these entities are "distinct corporations," with each maintaining its own financial reporting, and the firm represented Homeland (and not OneBeacon) in the AAM matter and has always been adverse to ASIC.  *See* Dkt. 23 at 4.

The most helpful cases on point, although they are largely from other districts, have considered the question of when a corporate parent and its wholly-owned subsidiary should be considered the same entity for conflicts purposes.  Although this matter, of course, involves the slightly different question of whether two corporate affiliates should be considered the same entity for conflicts purpose, the analysis is, for all intents and purposes, the same.  *See e.g., Honeywell Intern. Inc. v. Philips Lumileds Lighting Co.*, 2009 WL 256831, *2 (E.D. Tex. January 6, 2009) (disqualifying a law firm from representing a competitor because the company it was suing was considered a client by virtue of the firm's relationship with an affiliated corporation, as the company and its affiliates shared a common legal department, management and computer networks with conflicts attorneys in the same office).

In *Certain Underwriters at Lloyd's, London v. Argonaut Insurance Company*, a law firm represented Lloyd's in litigation against Argonaut while simultaneously representing Argonaut NW, a subsidiary, on other matters.  264 F. Supp. 2d 914 (N.D. Cal. 2003).  The question before the district court was whether Argonaut and Argonaut NW "should be considered a single entity for conflict" purposes.  *Id*. at 920.  The court noted that a parent corporation and its subsidiary, even if wholly-owned, are generally regarded as separate entities for conflicts purposes, unless the relationship between the entities are such that they

have a "unity of interests" so as to deserve being treated as one to uphold the lawyer's duty of undivided loyalty.  *Id*. at 920-21. The court found that Argonaut and Argonaut NW had sufficient unity of interest that the representation diminished Argonaut NW's trust and confidence in its lawyers based upon the fact that (1) the companies' financial prospects were closely linked,[12] and (2) the companies' claim operations were "thoroughly imbricated" or overlapping, with a single claims staff handling claims for both entities.  *Id*. at 923.  In fact, there was "nearly complete overlap" in the entities' management, with common directors and officers, and therefore "both the management operations and legal affairs in the handling of claims are essentially identical for both Argonaut and Argonaut NW."  *Id*. at 924.  As a result, the court concluded that there was, "for all practical purposes, but *one* client," mandating their treatment as a single entity for conflicts purposes, and requiring disqualification of the law firm. *Id.  See also Lennar Mare Island, LLC v. Steadfast Ins. Co.,* 105 F. Supp. 3d 1100, 1111 (E.D. Cal. 2015) (adopting *Argonaut*'s analysis and applying the unity-of-interests test to conclude that a corporation and its subsidiary, which share the same legal department, are a unified client for conflicts purposes); *GSI Commerce Solutions, Inc. v. BabyCenter L.L.C.*, 644 F. Supp. 2d 333, 336-67 (S.D.N.Y. 2009) (holding that although BabyCenter was technically a wholly-owned subsidiary, "as a practical matter [BabyCenter] was part of [the parent corporation] J&J]" based upon the fact that BabyCenter and J&J shared accounting, case management, finance, human resources and information technology, and "of particular relevance" was the fact that BabyCenter did not maintain its own legal department but relied on J&J's law department for legal services).

---

[12] Specifically, Argonaut participated in a pooled intercompany reinsurance agreement with Argonaut NW, under which the companies pooled their policies and shared premiums and liabilities.  As they directly shared profits and losses, both entities could be directly affected by an adverse judgment in the Lloyd's litigation.  *Id*. at 923.

1    This district has also analyzed concurrent conflicts under RPC 1.7 in a manner

2    consistent with *Argonaut*, *GSI Commerce Solutions*, *Honeywell*, and *Lenna*r.  In *Jones v.*

3    *Rabanco, Ltd.*, this Court previously considered whether the operations of Rabanco Ltd. and its

4    wholly-owned subsidiary RDC were so interrelated as to be considered a single entity for

5    conflicts purposes, requiring the disqualification of a law firm under RPC 1.7.  2006 WL

6    2237708, *4 (W.D. Wash. Aug. 3, 2006).  RDC was wholly-owned by Rabanco, and shared

7    staff and office space with its parent.  *Id*.  Some of the RDC executives were also executives at

8    Rabanco during the time period at issue.  *Id*.  The court held that "given the overlap of staff

9    and the intermingling of operations, especially between RDC and Rabanco, the appearance of

10   impropriety would be too great" if the law firm were to continue to represent the plaintiffs

11   against Rabanco in this matter.  *Id*.

12       Based upon this precedent, the Court concludes that ASIC and Homeland must be

13   considered a single entity for purposes of the conflicts analysis. ASIC has provided substantial

14   evidence showing that ASIC and Homeland's operations are sufficiently intertwined to reflect

15   a unity of interest.  As wholly-owned subsidiaries of OneBeacon, ASIC and Homeland conduct

16   unified operations.  Dkt. 17 (Lindley Decl.) at ¶ 1-2; Dkt. 18 (Arends Decl.) at ¶ 2.  All

17   OneBeacon member companies share the same mailing address and principal place of

18   business.  Dkt. 18 (Arends Decl.) at ¶ 2.  Perhaps most significantly, however, these entities'

19   operations are structured so that all claims-handling services for all OneBeacon companies are

20   handled by the same internal Claims Unit personnel, who are employees of ASIC, with the

21   claim leadership located in Plymouth, Minnesota.  Dkt. 17 (Lindley Decl.) at ¶ 4; Dkt. 18

22   (Arends Decl.) at ¶ 3.[13]  The same Claims Legal Unit handles all insurance coverage litigation

23

24       _____

         [13] All claims handled by the Claims Unit report up through various levels of
         management to the Chief Claims Officer.  Dkt. 18 (Arends Decl.) at ¶ 4.

commenced by or against the OneBeacon companies, including ASIC and Homeland.  Dkt. 17 (Lindley Decl.) at ¶ 6.  This is further exemplified by the fact that Homeland, Lane Powell's client in the AAM coverage dispute, has no employees, and the same claims attorney, Ms. Lindley, was involved in both the AAM and Premera matters.  Dkt. 17 (Lindley Decl.) at ¶ 4; Dkt. 18 (Arends Decl.) at ¶ 3.  In hiring Lane Powell and obtaining legal advice in the AAM matter, Ms. Lindley was an ASIC employee fulfilling ASIC's contractual obligations to its affiliate, Homeland.

Although Premera has provided numerous declarations establishing the fact that none of the attorneys at Lane Powell were previously aware of the relationship between ASIC and Homeland, and in fact considered themselves adverse to ASIC based upon their history of representing Anova Foods in a lawsuit against ASIC, the fact remains that an attorney-client relationship existed vis-à-vis the affiliates' unified operations.  In determining whether an attorney-client relationship exists, it is the reasonable understanding of the client, rather than the attorney, that controls.  As this court recognized in *Rabanco*, "Washington courts have held that another key factor that is determinative of whether or not the attorney-client relationship exists is the subjective belief of the client," as long as this belief is "reasonably based on the factual circumstances of the case." *Rabanco*, 2006 WL 2237708, at *3 (quoting *Bohn v. Cody*, 119 Wash.2d 357, 363 (1992)).  *See also Oxford Systems, Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055 (W.D. Wash. 1999) ("Washington law is clear that the existence of an attorney-client relationship turns largely on the client's subjective understanding of whether such a relationship exists, provided that subjective belief is reasonable under all the circumstances.").

Based upon the circumstances, the Court finds OneBeacon's belief that Lane Powell was representing it to be reasonable.  The Court also finds that although Lane Powell apparently did not know that ASIC and Homeland are both subsidiaries of OneBeacon, the

1   firm should have known.  Homeland's status as a subsidiary of OneBeacon was clearly

2   disclosed to Lane Powell from the onset of its representation in the AAM matter.  For example,

3   when Ms. Lindley originally engaged Lane Powell in August 2015 to represent Homeland in

4   the AAM matter, all of her emails to Mr. Patton and the other attorneys at Lane Powell came

5   from her OneBeacon email account (onebeacon.com), and her signature block clearly

6   identified her as a claims attorney for OneBeacon Environmental.  Dkt. 17 (Lindley Decl.) at

7   ¶¶ 11, 14; Dkt. 18 (Arends Decl.) at ¶¶ 6-7.  In lieu of a formal engagement letter, Ms. Lindley

8   sent Lane Powell a document entitled "OneBeacon Insurance Company Counsel Case

9   Handling Guidelines" on August 19, 2015, as well as a copy of a form letter on "OneBeacon

10  Insurance" letterhead providing instructions for the "OneBeacon Insurance" online invoice

11  submission system.  *Id.* at ¶ 13; Dkt. 17 (Lindley Decl.), Ex. 1 (OneBeacon guidelines).  As

12  noted above, the OneBeacon Insurance Company Counsel Case Handling Guidelines define

13  the relationship between outside counsel and "OneBeacon Insurance, *and its specialty business*

14  *segments*."  Dkt. 17 (Lindley Decl.), Ex. 1 (emphasis added).  Throughout Lane Powell's

15  representation, attorneys dealt directly with Ms. Lindley as well as other members of

16  OneBeacon's Claims Legal department.  Dkt. 17 (Lindley Decl.) at ¶¶ 15-17.[14]

17          Premera argues that OneBeacon, rather than Lane Powell, "bears responsibility for the

18  conflict of interest problem that it alleges."  Dkt. 23 at 10.  Specifically, Premera contends that

19  OneBeacon is at fault for retaining Lane Powell in the AAM matter.  Premera alleges that "Ms.

20  Lindley knew that Lane Powell's only client was Homeland, and not [ASIC].  She hired Lane

21  Powell . . . even though Lane Powell had been, for three years, adverse to [ASIC.]"  Dkt. 23 at

22          [14] For example, Ms. Lindley asserts in her declaration that Lane Powell had extensive
23  discussions with Ms. Lindley and OneBeacon's Claims Legal department and learned
    OneBeacon's litigation strategy in coverage actions, its view of policy interpretation, its
24  perspective on Washington insurance law, and related matters.  Dkt. 17 (Lindley Decl.) at ¶¶
    15-17.  *See also* Dkt. 18 (Arends Decl.) at ¶ 7.

9.[15]  Premera further argues that Ms. Lindley "knew, at the time she retained Lane Powell, that Lane Powell represented Premera in the very litigation that underlies this lawsuit." *Id*.  Finally, Premera contends that "Ms. Lindley had no reason to believe that Lane Powell was aware of the . . . relationships within the OneBeacon corporate family," and "only Ms. Lindley had this information, and yet she made no effort to educate Lane Powell as to it." *Id*. at 11.

Premera's attempt to blame Ms. Lindley, and therefore OneBeacon, for "creating a conflict" by retaining Lane Powell in the AAM matter is both distasteful and wrong.  As noted above, the Rules of Professional Conduct impose duties on lawyers, and not their clients, to identify potential conflicts of interest and obtain informed consent, if necessary.  Ms. Lindley has provided evidence that at the time she hired Lane Powell in August 2015 in the AAM matter, she was not aware that Lane Powell had undertaken an adverse representation to ASIC in another lawsuit (the Anova matter) and did not learn this information until Mr. Beighle brought up the Anova lawsuit during the January 14, 2016 telephone call.  Dkt. 35 (Second Lindley Decl.) at ¶¶ 2-7.  Moreover, the fact that Ms. Lindley knew that Lane Powell was representing Premera in actions in which ASIC and Premera's interests were fully aligned, *i.e.*, the defense of Premera as local counsel in the individual lawsuits and class action, does not establish that Ms. Lindley should have identified a potential conflict, as she was still unaware that Lane Powell was also acting as Premera's coverage counsel.  *Id*. at ¶ 9.  As detailed above, as soon as Ms. Lindley saw the Notices of Appearance by the Lane Powell attorneys in this action, she immediately notified Lane Powell about the conflict.  There is no evidence to suggest that the current motion to disqualify was filed for tactical purposes rather than out of a

---

[15] Lane Powell's argument that when the firm began representing Homeland, the firm was already adverse to ASIC in another matter (the Anova matter), is not a defense to the conflict of interest alleged here.  If anything, it provides another example of Lane Powell failing to identify a potential concurrent conflict of interest at the time the firm accepted the representation.  A prior failure on the firm's part cannot be used to justify a second failure.

1    very real concern that Lane Powell was familiar with the litigation strategy adopted in

2    coverage cases by virtue of the firm's involvement in the AAM coverage litigation.

3           The Court is mindful that disqualification of counsel is a drastic measure, as it impacts

4    a client's right to chosen counsel and can be disruptive to the litigation process.  This is

5    particularly true in a case such as this one, where the attorney-client relationship has spanned

6    nearly two decades.  At the end of the day, however, this concurrent conflict could have been

7    avoided entirely if Lane Powell had executed a formal engagement letter at the outset of the

8    firm's representation of Homeland – a new firm client - in the AAM matter.  During oral

9    argument, Lane Powell could not explain why an engagement letter was not executed at the

10   outset of the Homeland representation.  Similarly troubling to the Court was the fact that Lane

11   Powell could not advise the Court as to whether OneBeacon was identified as a firm client in

12   Lane Powell's conflicts check system.

13          Accordingly, the Court finds that Lane Powell's representation of Premera in this

14   action, adverse to ASIC, presents a concurrent conflict of interest.  Homeland and ASIC are

15   closely affiliated subsidiaries of OneBeacon, with Homeland having no employees and ceding

16   100% of its direct business to ASIC, and ASIC performing claims handling and other duties on

17   Homeland's behalf.  ASIC and Homeland are treated as a single entity for purposes of the

18   conflicts analysis, and therefore Lane Powell's representation of Premera in this matter is

19   directly adverse to not only ASIC but Homeland, another Lane Powell client.  Accordingly,

20   Rule 1.7 requires Lane Powell's disqualification as a law firm cannot simultaneously represent

21   a client in one matter while representing another party suing that same client in another matter,

22   absent the client's informed written consent.

23

24

1

2

      F.     <u>Lane Powell's Subsequent Withdrawal, or Termination, from the AAM Matter</u>
           <u>Does Not Make Homeland a Former Client for Conflicts Purposes</u>

3

      Premera claims that "because Homeland is not a current client" of Lane Powell, the

4

former-client rule set forth in RPC 1.9 applies.  Dkt. 29 at 10.  Under the less stringent RPC

5

1.9, the conflicting representations must be "substantially related" to require disqualification,

6

and Premera contends that the AAM matter and this matter are not substantially related as that

7

case involved a claim by an injured employee of a construction company.  *See* Dkt. 23 at 6.

8

Moreover, Premera asserts that Lane Powell was not attempting to convert a preexisting client

9

into a former client by dropping them like a "hot potato," because Lane Powell had a "bona

10

fide independent basis" to sever its ties to Homeland.  This "bona fide independent basis",

11

according to Premera, is the fact that Homeland retained Lane Powell in August 2015 with full

12

knowledge that the firm has been adverse to ASIC in the Anova matter since November 30,

13

2012, and adverse to ASIC in the cyberattack litigation underlying this lawsuit.  Dkt. 29 at 9-

14

10.  *See also* Dkt. 28 (Neeleman Decl.) at ¶¶ 2-7.

15

      Premera's arguments fail, and the Court declines Premera's invitation to analyze this

16

case under RPC 1.9 as though Homeland were a former, rather than concurrent, client.  As a

17

threshold matter, the question under RPC 1.7 is whether there was concurrent representation of

18

adverse clients, *i.e.*, whether "the attorney undertook representation adverse to a present

19

client," and not whether there is dual representation at the time disqualification is sought.

20

*Unified Sewerage Agency of Washington County, Or. v. Jelco Inc.*, 646 F.2d 1339, 1345 n.4

21

(9th Cir. 1981) (noting that the "present-client standard applies if the attorney simultaneously

22

represents client with differing interests . . . even though the representation ceases prior to

23

filing of the motion to disqualify.  If this were not the case, the challenged attorney could

24

always convert a present client into a 'former client' by choosing when to cease to represent

1   the disfavored client.").   It is undisputed that Lane Powell undertook concurrent

2   representations of Homeland and Premera, although these companies had adverse interests.

3        In addition, Lane Powell's contention that Ms. Lindley knew Lane Powell was adverse

4   to ASIC in the Anova matter when she retained the firm to represent Homeland in August 2015

5   is not supported by the record.   Ms. Lindley did not know about the Anova policy or coverage

6   dispute until after she discovered the Premera conflict in December 2015.   Dkt. 35 (Second

7   Lindley Decl.) at ¶¶ 2-7.   When Ms. Lindley discovered the Premera conflict, the "ASIC's

8   Claims Legal department undertook an investigation to determine whether Lane Powell was

9   currently representing ASIC, Homeland, or any other OneBeacon member company in any

10  other matters."   *Id.* at ¶ 4.   As part of that investigation, ASIC searched its computerized claim

11  system and identified the Anova Foods matter that had been sold to Armour Risk in December

12  2014.   *Id.* at ¶ 5 (noting that the search result indicated Lane Powell was associated with the

13  matter, but did not indicate the nature of its association, *i.e.,* that it was representing Anova

14  adverse to ASIC).   Thus, Ms. Lindley did not learn that Lane Powell was adverse to ASIC in

15  the Anova Matter until Lane Powell's General Counsel, Mr. Beighle, disclosed that fact during

16  the January 14, 2016 telephone call.   *Id.* at ¶¶ 6-7.

17       Because the Anova policy had been sold by OneBeacon to Armour Risk in December

18  2014, OneBeacon was no longer the policy owner and had discontinued claim-handling

19  activities before Lane Powell was retained to represent Homeland in the AAM matter in

20  August 2015.   Premera responds to this information in a single footnote, stating that Lane

21  Powell was unaware that the Anova book had been sold by OneBeacon, and "this is the first

22  time Lane Powell or Anova LLC has ever been informed of this[.]"   Dkt. 23 at 10 fn.11.[16]

23

24       [16] Premera asserts that "it would not have obviated Lane Powell's need to obtain a
         waiver from Anova LLC in any event, as [ASIC] remains Anova LLC's opponent."   *Id.*

ORDER - 29

1   Despite Premera's attempt to downplay this significant evidence, the Court finds that the

2   Anova matter did not actually present a concurrent conflict of interest necessitating Lane

3   Powell's mid-stream withdrawal (in the midst of drafting a summary judgment motion) due to

4   the firm's representation of Premera in this case.

5          Moreover, Lane Powell's representation of Premera, and treatment of its client

6   Homeland once Ms. Lindley identified the conflict, gives rise to an "appearance of

7   impropriety" that the conflicts rules are designed to prevent.  *See Jones*, 2006 WL2237708, at

8   *4 (noting that although there is not a large body of case law in this area, "courts tend to take a

9   pragmatic approach to the consequences of the attorney's relationship with the corporate

10  family") (citations omitted).  Indeed, the Ninth Circuit has held that "fiduciary obligations and

11  professional responsibilities may warrant disqualification of counsel in appropriate cases even

12  in the absence of a strict contractual attorney-client relationship. *Id*. (citing *Trone v. Smith*, 621

13  F.2d 994, 1002 (9th Cir. 1980)).

14         RPC 5.1(a) provides that law-firm management must establish reasonable procedures to

15  ensure compliance with the RPCs, including the detention and resolution of conflicts.  *See* RPC

16  5.1(a); Comment 2.  The Court can only presume that Lane Powell's conflicts system failed to

17  include affiliated entities, as evidenced by Lane Powell's assertions that OneBeacon is to

18  blame for failing to identify, and advise the firm, regarding any possible conflicts of interest

19  involving OneBeacon affiliates.  *See* Dkt. 23 at 5 (arguing that "Lane Powell's conflicts system

20  did not identify Homeland as adverse to any Lane Powell client; the Anova litigation did not

21  involve Homeland."); Dkt. 23 at 11 (arguing that Ms. Lindley had "no reason to believe that

22  the law firm was aware" of the relationships within the OneBeacon corporate family).  As

23  noted above, Lane Powell could not advise the Court during oral argument as to whether

24  OneBeacon is identified as a client in the firm's conflicts checks system.  However, the law

ORDER - 30

1  firm's ignorance of OneBeacon's corporate affiliations cannot be used as an excuse to both

2  enter into – and withdraw mid-stream – from attorney-client relationships at the firm's whim.

3        As district courts have recognized, "the onus is clearly on the lawyer to anticipate and

4  resolve conflicts of interest involving corporate affiliates." *Honeywell*, 2009 WL 256831, *2.

5  Indeed, even if the client was aware of any such conflict, the firm would still have been

6  required to obtain informed written consent.  RPC 1.7(b)(4).  Premera's argument that

7  OneBeacon staff are at fault for failing to "advise [outside counsel] that Lane Powell needed to

8  obtain any conflict of interest waiver from Premera or any other Lane Powell client" simply

9  misses the point.  *See* Dkt. 27 (Patton Decl.) at ¶ 3.

10                          III.      CONCLUSION

11       Accordingly, the Court finds that given the overlap of staff and intermingling of

12  operations between ASIC and Homeland, these companies share a "unity of interest" and are

13  treated as a single entity for conflicts purposes.  In light of this finding, the appearance of

14  impropriety would be too great if Lane Powell were to continue represent Premera against

15  ASIC in this matter, based upon Lane Powell's concurrent representation of Homeland in the

16  AAM matter.  Accordingly, ASIC's motion to disqualify Lane Powell as counsel in this matter,

17  Dkt. 16, is GRANTED.  Premera shall retain new counsel, who should file their Notices of

18  Appearance in this case within thirty (30) days of the date of this Order.

19       DATED this 22nd day of April, 2016.

20

21  *James P. Donohue*
    _____

22  JAMES P. DONOHUE
    Chief United States Magistrate Judge

23

24